Robert J. Goldman (CSB # 189922)
  robert.goldman@ropesgray.com
Linda E. Rost (CSB # 211769)
  linda.rost@ropesgray.com
Kelly L. Baxter (CSB # 232286)
  kelly.baxter@ropesgray.com
ROPES & GRAY LLP
525 University Avenue
Palo Alto, California 94301
Tel.: (650) 617-4000
Fax.: (650) 617-4090

Attorneys for Defendant
CELL SIGNALING TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| EPITOMICS, INC.,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>CELL SIGNALING TECHNOLOGY, INC.,<br><br>　　　Defendant. | Case No. C 07-5275 MMC<br><br>**ANSWER TO COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

　　　　　Pursuant to Rule 12, Fed. R. Civ. P., Defendant Cell Signaling Technology, Inc. ("CST"), a Massachusetts corporation, hereby responds to Plaintiff Epitomics, Inc.'s ("Epitomics") Complaint. The numbered paragraphs in CST's Answer correspond to the numbered paragraphs of the Complaint. To the extent not expressly admitted, CST denies the averments of the Complaint. CST responds as follows:

## INTRODUCTION

To the extent that the "Introduction" portion of the Complaint purports to allege grounds for this action, CST denies those allegations.

This is an action that should never have been commenced because the Technology License Agreement ("Agreement") provides a process to resolve disputes and Epitomics has not participated in that process in good faith.

CST has met all of its obligations under the Agreement. This dispute arises because, as Epitomics stated in the Introduction to its Complaint, Epitomics claims to be "not aware of any scientific process" for producing rabbit monoclonal antibodies other than its own processes. CST denies this averment as alternative technologies to make rabbit monoclonal antibodies are currently available. Since this dispute first arose in December 2006, CST has repeatedly informed Epitomics that it has developed both rabbit monoclonal antibodies and processes for producing them that are *not* based on the Fusion Technology that Epitomics has asserted as its own. These processes, however, are trade secrets of CST.

CST has tried, without success, to get the parties into a mediation process by which it could disclose its new technology to a mediator skilled in the art, such that the mediator could inform Epitomics that its concerns are baseless and such that the parties could settle this dispute without requiring the intervention of the Court. For reasons that it has never disclosed, Epitomics has refused to participate in any such process, even though ¶ 7.11 of the Agreement requires the parties to make "a good faith attempt at amicable resolution" of any dispute, and suggests mediation as the means to do so.

## THE PARTIES

1. On information and belief, admitted.
2. Admitted.

## JURISDICTION AND VENUE

3. CST admits that the parties are citizens of different States. CST admits that this Court has jurisdiction over causes of action with diversity of citizenship and an amount in controversy exceeding the sum or value of $75,000, exclusive of interest and costs. CST

denies that Epitomics should be granted any of the relief averred, and denies the remaining averments of paragraph 3 of the Complaint.

4. CST admits that venue is proper in this Judicial District and denies the remaining averments of paragraph 4 of the Complaint.

**BACKGROUND FACTS**

5. CST admits that Dr. Katherine Knight is the named inventor of U.S. Patent No. 5,675,063, that the patent issued on October 7, 1997 and that the face of the patent states that Loyola University of Chicago is the assignee. The '063 patent is titled "Immortalized Rabbit Hybridoma Fusion Partner." On information and belief, Dr. Robert Pytela did further work with respect to fusion partners for rabbit monoclonal antibodies at the University of California. To the extent not expressly admitted, CST denies the remaining averments of paragraph 5 of the Complaint because CST is without knowledge or information sufficient to form a belief as to the truth.

6. Epitomics has represented in the Agreement that it has license rights to a certain "improved, proprietary rabbit hybridoma fusion partner." To the extent not expressly admitted, CST denies the remaining averments of paragraph 6 of the Complaint because CST is without knowledge or information sufficient to form a belief as to the truth.

7. CST admits that Epitomics' process for making rabbit hybridomas is similar to methods for making mouse hybridomas. CST admits that rabbit hybridoma cells are created by fusing mortal B-cells, which produce antibodies, with immortal myeloma cells. CST admits that the rabbit hybridoma cells are screened to select for clones with specific and sensitive antigen recognition. To the extent not expressly admitted, CST denies the remaining averments of paragraph 7 of the Complaint because CST is without knowledge or information sufficient to form a belief as to the truth.

8. CST admits that mouse monoclonal antibodies are widely used and account for the largest monoclonal antibody market share and that in certain circumstances rabbit monoclonal antibodies may be advantageous or provide a useful alternative. To the

1 | extent not expressly admitted, CST denies the remaining averments of paragraph 8 of the Complaint.

2 | 9. Based on Epitomics' marketing literature available on its web site, Epitomics offers custom rabbit monoclonal antibodies. To the extent not expressly admitted, CST denies the remaining averments of paragraph 9 of the Complaint because CST is without knowledge or information sufficient to form a belief as to the truth.

3 | 10. CST provides a broad range of products and services not offered by Epitomics on its web site, including without limitation, kinases, phosphatases, substrate peptides, growth factors, cytokines, siRNA kits, IHC control slides, kinase inhibitors, kinase stimulators, molecular weight markers, kinase assay kits, ELISA kits, mass spectrometry immunoaffinity purification kits, fluorochrome and biotin-conjugated primary antibodies, and antibodies directed against specific motifs or fusion proteins. CST validates antibodies for a wide array of applications that do not appear to be used at Epitomics including multiplex immunofluorescence on tissues, in-cell western, ELISA, Bio-Plex, Lance, and Delphia. To the extent not expressly admitted, CST denies the remaining averments of paragraph 10 of the Complaint.

11. CST admits that it entered into the Agreement with Epitomics on February 20, 2003. The term "Fusion Technology" is defined in the Agreement, and Epitomics has accurately quoted that definition from ¶ 1.1 of the Agreement. CST license rights are set forth in ¶ 2.1 of the Agreement. CST has a non-exclusive, non-transferable, worldwide, royalty-bearing license (i) to possess and use Fusion Technology to manufacture Licensed Products (defined in ¶ 1.2) and (ii) to make, use, offer for sale, sell, and import Licensed Product and (iii) grants a non-exclusive, perpetual, royalty-bearing license to manufacture, use, offer for sale, sell, and import all Licensed Product produced by CST. To the extent not expressly admitted, CST denies the remaining averments of paragraph 11 of the Complaint.

12. The "Field of Use" is defined in ¶ 1.0 of the Agreement. However, under ¶ 2.4 of the Agreement, CST has the additional right to create hybridomas outside the Field of Use, subject to granting Epitomics an option to obtain an exclusive, worldwide, perpetual,

1  royalty-bearing license to select, obtain, and use DNA Material for production and
2  commercialization in the therapeutic field.  Epitomics has correctly stated that the Agreement
3  has a five year term, and the limitation as to the number of "protein targets" for which CST may
4  create antibodies during that term.  There is no dispute that CST has abided by the terms of this
5  provision of the Agreement.  To the extent not expressly admitted, CST denies the remaining
6  averments of paragraph 12 of the Complaint.
7         13.     CST admits that ¶ 3.3 of the Agreement sets forth "Restrictions on Use."
8  CST has abided by the terms of that clause.  To the extent not expressly admitted, CST denies
9  the averments of paragraph 13 of the Complaint.
10        14.     CST admits that ¶ 2.4 of the Agreement contains a "Therapeutic Field
11 Rights" clause.  As discussed above in response to paragraph 12, the Agreement grants CST the
12 right to make products outside the Field of Use, provided that CST first grants Epitomics an
13 option to obtain a royalty-bearing exclusive license to select, obtain, and use DNA Material
14 created by CST for the production and commercialization of antibody products in the
15 therapeutic field.  There is no dispute that CST has abided by this provision of the Agreement.
16 To the extent not expressly admitted, CST denies the remaining averments of paragraph 14 of
17 the Complaint.
18        15.     CST admits that ¶ 2.5 of the Agreement provides for "Grant-back for
19 Improvements," although the Agreement does not specify when such grant-back rights are to be
20 offered.  To the extent not expressly admitted, CST denies the averments of paragraph 15 of the
21 Complaint.
22        16.     CST admits that Section 4 of the Agreement sets forth the provisions
23 relating to Payments and Royalties and that Epitomics has accurately set forth some but not all
24 of those provisions.  To the extent not expressly admitted, CST denies the remaining averments
25 of paragraph 16 of the Complaint.
26        17.     CST admits that ¶ 3.4 of the Agreement provides for Liquidated Damages
27 "[i]n the event of any uncured breach of the restrictions of §3.3" of the Agreement.  There has
28 been no such breach and, even if such a breach were to be found in this action, no such damages

would be owing, if the breach can be cured, e.g., by the payment of royalties for disputed products. To the extent not expressly admitted, CST denies the averments of paragraph 17 of the Complaint.

18. After the effective date of the Agreement, Dr. Xiqiang Hong, CST's Director of Monoclonal Development, visited Epitomics' facility and met with Epitomics personnel to observe certain procedures related to how Epitomics makes rabbit hybridomas. CST personnel were provided with certain protocols related to this process. On March 18, 2003, CST received from Epitomics a fusion partner identified as "240E." On September 20, 2005, CST received from Epitomics a fusion partner identified as "240E-W2." To the extent not expressly admitted, CST denies the averments of paragraph 18 of the Complaint.

19. CST admits that Dr. Michael Comb, CST's CEO, and Dr. Guo-Liang Yu, Epitomics' CEO, spoke on November 28, 2006. On December 4, 2006, Dr. Comb wrote to Dr. Yu confirming the discussion. Dr. Comb informed Dr. Yu that CST had developed its own proprietary rabbit monoclonal production technology, which does not fall within the scope of the Agreement. Dr. Comb further informed Dr. Yu that CST planned to commercialize antibodies produced using CST's new technology. The purpose of Dr. Comb's courteous call was to inform Epitomics that CST had developed its own independent rabbit monoclonal antibody technology. To the extent not expressly admitted, CST denies the averments of paragraph 19 of the Complaint.

20. CST admits that on December 20, 2006, CST published a press release announcing its alliance with AstraZeneca, a previous customer of CST's, to provide rabbit monoclonal technologies for biomarker assays. CST has enjoyed longstanding business relationships, predating the Agreement, with both Genentech and Roche Pharmaceuticals for products other than rabbit monoclonal antibodies. CST has not entered into agreements for the production of rabbit monoclonal antibodies with Genentech or Roche Pharmaceuticals. In June 2006, CST hired Dr. Helen Cha, as a Drug Discovery Market Specialist. Her responsibilities and incentives compensation are exclusively based on antibody product sales. Dr. Cha used to

1  work for Epitomics as a business development manager. To the extent not expressly admitted, CST denies the averments of paragraph 20 of the Complaint.

21.  CST admits that on December 26, 2006, Epitomics wrote to CST concerning the Agreement and invoking the audit provisions of ¶ 4.8 of the Agreement. On January 22, 2007, CST responded that it did not use Fusion Technology in the development of CST's proprietary technology. In response to correspondence from Epitomics' outside counsel, who are trial counsel in this action, CST wrote additional letters on April 6, 2007 and May 29, 2007. To the extent not expressly admitted, CST denies the averments of paragraph 21 of the Complaint.

22.  On July 6, 2007, CST invoked the dispute resolution provision under ¶ 7.11 of the Agreement, requiring any dispute under the Agreement to "be first referred to senior management and/or in-house counsel of the parties for a good faith attempt at amicable resolution." Epitomics has not participated in that process in good faith. To the extent not expressly admitted, CST denies the averments of paragraph 22 of the Complaint.

23.  Denied.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF THE TLA)**

24.  CST incorporates by reference its responses to the allegations of paragraphs 1 through 23 of the Complaint.

25.  Admitted.

26.  Denied.

27.  Denied.

28.  Denied.

29.  Denied.

**SECOND CLAIM FOR RELIEF**
**(MISAPPROPRIATION OF TRADE SECRETS)**

30.  CST incorporates by reference its responses to the allegations of paragraphs 1 through 29 of the Complaint.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

### THIRD CLAIM FOR RELIEF
### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

36. CST incorporates by reference its responses to the allegations of paragraphs 1 through 35 of the Complaint.

37. CST admits that, as a general principle of contract law, there is an implied duty of good faith and fair dealing.  CST has fulfilled that duty with respect to the Agreement.  Except as expressly admitted, CST denies the remaining allegations of paragraph 37 of the Complaint.

38. Denied.

39. Denied.

### FOURTH CLAIM FOR RELIEF
### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

40. CST incorporates by reference its responses to the allegations of paragraphs 1 through 39 of the Complaint.

41. CST denies the averments of paragraph 41 of the Complaint because CST is without knowledge or information sufficient to form a belief as to the truth.

42. CST admits that in June 2006 it hired Dr. Helen Cha, who had previously been employed by Epitomics as a business development manager.  CST denies that it learned confidential details regarding Epitomics' business relationships from the employment of Dr. Cha and, to the extent not expressly admitted, denies the remaining averments of paragraph 42 of the Complaint.

43. Denied.

44. Denied.

## FIFTH CLAIM FOR RELIEF
### (AIDING AND ABETTING BREACH OF DUTY)

45.  CST incorporates by reference its responses to the allegations of paragraphs 1 through 44 of the Complaint.

46.  CST denies the averments of paragraph 46 of the Complaint because CST is without knowledge or information sufficient to form a belief as to the truth.

47.  Denied.

48.  Denied.

## CST'S AFFIRMATIVE DEFENSES

As and for separate defenses to the allegations of paragraphs 1 to 48 of the Complaint, CST states as follows:

49.  The information alleged to constitute confidential information or trade secrets of Epitomics is not in fact confidential information or a trade secret.

50.  Even if any of Epitomics' information were to be considered a trade secret, CST has not committed any acts that would constitute misappropriation of that information.

51.  Except for the products and services that are in dispute, CST has made all payments required under the Agreement.

52.  Except for the products and services that are in dispute, CST has timely met all of its obligations under the Agreement.

53.  To the extent that CST's activities fall within the scope of the Agreement, they are licensed by Epitomics.

## CST'S PRAYER FOR RELIEF

WHEREFORE, with respect to its Answer, CST respectfully requests that this Court enter judgment:

1         a)      That Epitomics take nothing by its Complaint and that all claims for relief in said Complaint be dismissed with prejudice;

        b)      That the Court adjudge and declare that CST has not breached the contract;

        c)      That the Court adjudge and declare that CST has not misappropriated trade secrets;

        d)      That the Court adjudge and declare that CST has not breached the covenant of good faith and fair dealing;

        e)      That the Court adjudge and declare that CST has not tortiously interfered with prospective economic advantage;

        f)      That the Court adjudge and declare that CST has not aided and abetted breach of duty;

        g)      That Epitomics, its agents, employees, attorneys, and those persons in active concert with it, be enjoined from threatening or commencing any further action against CST, its directors, officers, employees, agents, or suppliers related to any of the claims for relief made by the plaintiff in this action.

        h)      That CST be awarded its costs and attorney fees in this action; and

        i)      That CST be awarded such other and further relief as this Court deems just and proper.

///

///

///

| | |
|---|---|
| 1 | **DEMAND FOR JURY TRIAL** |
| 2 | CST demands a trial by jury of all claims and issues triable as of right by jury in |
| 3 | this action. |

Respectfully submitted,

December 19, 2007

By: /s/ *Robert J. Goldman*
Robert J. Goldman (CSB # 189922)
Linda E. Rost (CSB # 211769)
Kelly L. Baxter (CSB # 232286)
ROPES & GRAY LLP

Attorneys for Defendant
CELL SIGNALING TECHNOLOGY, INC.